0

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------x          **Index No.:**
**ALTHEA APPLETON,**

                                **Plaintiff,**          **VERIFIED**
                                              **COMPLAINT**

        **-against-**

**THE CITY OF NEW YORK and,**
**NEW YORK CITY HUMAN RESOURCES**
**ADMINISTRATION,**          **Jury Trial**
                                                **Requested**
                                **Defendants.**
--------------------------------------------------------------------------x

     Plaintiff, Althea Appleton, complaining of Defendants respectfully alleges as follows:

## INTRODUCTION

     1.  This is an action for discrimination based on gender in the terms, conditions, and privileges of employment, and for retaliation for actions, protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., the Civil Rights Act of 1991 ("Title VII") and by the New York City Human Rights Law, Administrative Code §§ 8-101 et seq. (the "Code").

     2.  Plaintiff also seeks costs and attorneys' fees authorized by 42 U.S.C. §§ 2000e- 5(k) and the Code § 8-502(f) and other relevant statutes.

## JURISDICTION

     3.  The jurisdiction of the Court over this controversy as to enforcement of the provisions of the Civil Rights Act of 1964 as amended is based upon 42 U.S.C. § 2000e- 5(k).

     4.  Supplemental jurisdiction of the Court over the claims based on the Code is based on 28 U.S.C. § 1367.

## VENUE

5.   The unlawful employment practices alleged below were committed within the Southern District of New York.  Accordingly, venue lies within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## EXHAUSTION OF REMEDIES

6.   Prior to filing this Complaint, Plaintiff timely filed a written charge under oath asserting sexual harassment and retaliation under Title VII with the United States Equal Employment Opportunity Commission (the "EEOC") within 300 calendar days of the date on which the last discriminatory act allegedly therein occurred, which was assigned Charge No(s). 160-2005-01198 and 160-2005-01199.

7.   Plaintiff received a finding from the EEOC that determined that Plaintiff was subjected to sexual harassment, hostile work environment and retaliation at the hands of Defendant HRA's employee and Defendant HRA failed to take effective action to remedy the unlawful actions of its employee (a copy is attached hereto as Exhibit A).

8.   Plaintiff received a Notice of Rights to Sue letter, for the Defendants, The City of New York and New York City Human Resources Administration ("HRA"), from the U.S. Department of Justice dated October 3, 2005 (a copy is attached hereto as Exhibit B).

9.   In conformance with 29 U.S.C. § 626(d), Plaintiff now files this Complaint within 90 days after the Plaintiff received the Notice of Right to Sue from the U.S. Department of Justice.

## PARTIES

10. Plaintiff is an African American female born on January 1, 1967.  At all relevant times, the Plaintiff was an "employee" covered by Title VII and a "person" within the meaning of the Code.

11. Defendant HRA is located at 180 Water Street, 17th Floor, New York, New York 10007.  At all relevant times, HRA was an "employer" within the meaning of Title VII.

12. At all relevant times, HRA was an "employer" within the meaning of the Code §§ 8-101 et seq.

13. Defendant City of New York is located at One Centre Street, Room 1200, New York, New York 10007-2341.

## STATEMENT OF FACTS

14. On or about February 8, 1993, Plaintiff began her employment with HRA and is currently holds the position of Associate Fraud Investigator.

15. Around January of 2003, Plaintiff began to experience discrimination, harassment and differential treatment, based upon her sex from her co-worker, Mr. Jerome Jordan ("Jordan").  Plaintiff was subsequently retaliated against.

16. In or about January of 2003, a co-worker named Candace George told Plaintiff, "I heard that you are fucking Jordan.  Is it true?"  Plaintiff told her that it was not and asked her where she heard that.  She said that she did not remember.

17. Shortly after, Plaintiff confronted Jordan about this rumor.  He denied making the assertion to anyone in the office.  However, three (3) other co-workers also stated to

Plaintiff that Jordan had made this allegation to them or in their presence to other coworkers.

18. Plaintiff then complained to her supervisor, Associate Fraud Investigator Tracey Diamonds ("Diamonds"), about Jordan's conduct. Diamonds merely laughed and said, "He must like you. Maybe he has a crush on you." Plaintiff told her that she found Jordan's comments very offensive, not least of all because it was not true, and asked Diamonds to remedy the situation and to stop the rumors.

19. Not only did Plaintiff's supervisors take no remedial step, but Jordan's harassment was allowed to continue and intensify. Subsequent to Plaintiff's complaint in January, Jordan began to come to Plaintiff's desk, on the pretext of needing her signature on documents, and would stand uncomfortably close to Plaintiff. Jordan would also touch and squeeze Plaintiff's hand while she was signing and brush up against her with his body. On each occasion, Plaintiff asked him to stop.

20. In addition, between January 2003 and October 2004, Jordan would repeatedly brush up against Plaintiff in clearly inappropriate ways. On at least two occasions, Jordan pressed up against Plaintiff from behind when she was standing in front of the fax machine. On at least three occasions, Jordan grabbed Plaintiff improperly on her waist and on at least three occasions, Jordan grabbed Plaintiff's behind.

21. In addition to the physical harassment, Jordan made repeated offensive verbal comments to Plaintiff. Jordan would repeatedly whisper in Plaintiff's ear, "You know you want me", "Why are you playing hard-to-get?", "You're so sexy", "You know you need a real man like me", and "I will turn you out baby." Plaintiff told him to leave me alone each and every time.

22. Plaintiff complained about Jordan's behavior to Diamonds and Lewis at least two times each throughout her employment with HRA.  Each time they would tell her that they are looking into it or that they are taking care of it.  Plaintiff also complained about Jordan's behavior to his Supervisor, Carmen Torres ("Torres").

23. Around mid-year 2004, Jordan cornered Plaintiff by a copy machine, grabbed and twisted her arm and said, "Stop playing hard-to-get.  Your boyfriend cannot do for you what I can."  Plaintiff's arm was physically injured.  Again, Plaintiff told Jordan to stop.

24. Around May of 2004, Jordan told Plaintiff that he would have a friend come into the office and shoot everyone.  He told Plaintiff that he would make certain that Plaintiff was the first person shot.  Plaintiff again complained to her manager, Associate Fraud Investigator Marilyn Lewis ("Lewis"), about this incident, as well as reminding her about all of the previous incidents of sexual harassment and that despite her complaints, they continue to occur.  Lewis again said that she will look into it.

25. In or around early October 2004, Jordan confronted Plaintiff as she was leaving the building.  He began pointing his finger in Plaintiff's face and said, "Why are you ignoring me?" in a threatening manner.  He stood blocking Plaintiff's path so that she could not walk past him and continued to walk in front of her each time she tried to go around him.  Plaintiff was very frightened as Jordan was very angry and threatening.

26. That same week, one of Plaintiff's supervisors, Sherry Ellis ("Ellis"), called Plaintiff at home and told her that there were photographs of Plaintiff naked that were being shown in the office and that Ellis did not like what was going on.  Ellis informed

Plaintiff that Jordan was sharing these photos with at least four of her male co-workers (Derrick Knowles, James Lawson, Benjamin Evans and Mark Alfred).

27. Plaintiff immediately called one of these co-workers, Mark Alfred, and he confirmed that he had been shown the photographs and that they were naked pictures of Plaintiff.

28. These photos must have been computer made by Jordan with an actual photo of Plaintiff's face and someone else's body attached to it because Plaintiff never posed for nude pictures.

29. The following workday, October 14, 2004, Plaintiff went immediately to Lewis's office upon arriving at work.  Again, Plaintiff complained to her about the photograph incident, as well as prior instances of harassment by Jordan.  Lewis indicated that she would investigate immediately.

30. Due to the emotional distress caused by this harassment, Plaintiff was on medical leave without pay from on or about October 14, 2004 through on or about January 2005, under the direction of Plaintiff's doctor.

31. Approximately one week later, Plaintiff learned that Jordan had been moved to work on another floor in the same building.

32. During that same week, Plaintiff received phone calls from at least four of her co-workers who were concerned for her well-being.  Each told Plaintiff that the prevailing rumor in the office was that Plaintiff had had a sexual relationship with Jordan and that there were naked photographs of Plaintiff, ostensibly proving said relationship. However, this is false and is causing Plaintiff severe distress and great embarrassment.

33. Plaintiff also called the Company timekeeper, Ms. Kissie, and she told Plaintiff that Plaintiff was being referred to as "The Office Whore." She specifically named Ms. Bradby as one of the individuals referring to Plaintiff in that manner.

34. Subsequent to Jordan's move to the other floor, Plaintiff went to report to work to file for Workers Compensation and Jordan was standing by the entrance of the building. Plaintiff turned around and walked away as she was scarred to walk past him.

35. After that incident, Plaintiff's doctor ordered her not to return to work from the period of on or about October 2004 through on or about January 2005 given the fact that it is very possible that she will again run into Jordan and increasingly aggravate her emotional distress.

36. On or about November 23, 2004, Plaintiff spoke to personnel associate Mrs. Wilson. She informed Plaintiff that they were not going to terminate Jordan and that if Plaintiff wanted to continue working there, it would have to be in the same building as Jordan.

37. Jordan is currently employed in the same building as Plaintiff. Plaintiff is scared and extremely uncomfortable while she is at work.

38. Several of Plaintiff's coworkers currently make fun of and ridicule Plaintiff because she commenced legal proceedings.

39. During Plaintiff's eleven years of employment with HRA, she has performed her duties in an efficient and professional manner.

40. Plaintiff is regularly receiving treatment by a psychiatrist and a psychologist for severe emotional distress that is caused by the ongoing harassment and retaliation.

41. As a direct and proximate consequence of Defendants' intentional and unlawful discriminatory employment policies and practices, Plaintiff has suffered loss of income, including past and future salary increases and fringe benefits, severe mental and emotional harm, and other nonpecuniary losses.

42. Defendants knew or should have known of the harassment and failed to take adequate measures to prevent or stop it.

43. Defendants engaged in a pattern and practice of discrimination by failing to prevent and promptly correct the discriminatory treatment.

## AS AND FOR THE FIRST CLAIM:

## DISCRIMINATION BASED ON GENDER IN VIOLATION OF TITLE VII

44. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-43 above.

45. Plaintiff was forced to endure discrimination based on her gender in violation of Title VII.

46. HRA and The City of New York have engaged in unlawful employment practices in violation of Title VII.

47. The unlawful employment practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's federally protected rights.

48. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and

possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

49. Defendants HRA and The City of New York are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE SECOND CLAIM:

## DISCRIMINATION BASED ON GENDER IN VIOLATION OF THE CODE

50. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-49 above.

51. By subjecting the Plaintiff to the unlawful practices and gender discrimination set forth above, defendants have violated Plaintiff's rights under §§ 8-107(1)(a) and 8-107(13)(b)(1) and (b)(2) of the Code.

52. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

53. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

54. Additionally, Defendants' conduct as described herein was willful, malicious and oppressive, and done with a conscious disregard of Plaintiff's rights and well being.

## AS FOR THE THIRD CLAIM:

## DENIAL OF TERMS AND CONDITIONS BASED ON

## GENDER IN VIOLATION OF TITLE VII

55.     Plaintiff re-avers and incorporates by reference all of the allegations of paragraphs 1 through 54 of this Complaint with the same force and effect as if fully set forth herein.

56.     Plaintiff was forced to endure discrimination and harassment on the basis of her gender in violation of Title VII.

57.     Defendants have engaged in unlawful employment practices in violation of the Title VII.

58.     Defendants have discriminated against the Plaintiff on the basis of gender and have denied her equal terms, conditions and privileges of employment, in violation of Title VII.

59.     The unlawful practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's rights.

60.     As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

61.     Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## <u>AS FOR THE FOURTH CLAIM:</u>

## <u>DENIAL OF TERMS AND CONDITIONS BASED ON</u>

## <u>GENDER IN VIOLATION OF THE CODE</u>

62.     Plaintiff re-avers and incorporates by reference all of the allegations of paragraphs 1 through 61 of this Complaint with the same force and effect as if fully set forth herein.

63.     Plaintiff was forced to endure discrimination and harassment on the basis of her gender in violation of the Code.

64.     Defendants have engaged in unlawful employment practices in violation of the Code.

65.     Defendants have discriminated against the Plaintiff on the basis of gender and have denied her equal terms, conditions and privileges of employment, in violation of the Code.

66.     The unlawful practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's rights.

67.     As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

68.     Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE FIFTH CLAIM:

## RETALIATION IN VIOLATION OF TITLE VII

69. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-68 above.

70. In violation of Title VII, Defendant HRA and The City of New York retaliated against Plaintiff by subjecting her to unwarranted adverse actions in her employment.

71. The unlawful employment practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's federally protected rights.

72. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

73. Defendants HRA and The City of New York are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE SIXTH CLAIM:

## RETALIATION IN VIOLATION OF THE CODE

74. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-73 above.

75. In violation of the Code, Defendants retaliated against Plaintiff by subjecting her to unwarranted adverse actions in her employment.

76. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

77. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorney's fees, in a sum to be awarded by Court and jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests judgment against the Defendants as follows:

1)  On the First Claim, for discrimination on the basis of gender in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

2)  On the Second Claim, for discrimination in violation of the Code against Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

3)  On the Third Claim, for denial of terms and conditions based on gender in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front

pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

4) On the Fourth Claim, for denial of terms and conditions based on gender in violation of the Code against Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

5) On the Fifth Claim, for retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

6) On the Sixth Claim, for retaliation in violation of The Code against Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees; and

7) For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

The Plaintiff demands a jury trial of all issues properly triable by a jury.


Dated: October 14, 2005
　　　　New York, New York


　　　　　　　　　　　　　　　Respectfully submitted,



　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　Vivek V. Gupta, Esq. (VG 9794)
　　　　　　　　　　　　　　　MARK STUMER & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　200 Park Avenue South, Suite 1511
　　　　　　　　　　　　　　　New York, New York 10003
　　　　　　　　　　　　　　　Telephone (212) 633-222
　　　　　　　　　　　　　　　Facsimile (212) 691-3642

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x   **Index No.:**
**ALTHEA APPLETON,**

                                        **Plaintiff,**                                **VERIFICATION**

              **-against-**

**THE CITY OF NEW YORK and**
**NEW YORK CITY HUMAN RESOURCES**
**ADMINISTRATION,**

                                        **Defendants.**
-------------------------------------------------------------------------x

STATE OF NEW YORK      )
                                        ) ss.:
COUNTY OF NEW YORK   )

              Althea Appleton, being duly sworn, deposes and says:

              I am the plaintiff in the above-entitled action.  I have read the foregoing

Verified Complaint and know that all of the assertions set forth therein are true and are

within my personal knowledge, except as matters alleged on information and belief, and

as to those matters, I believe them to be true.


                                        _____
                                        ALTHEA APPLETON

Sworn to before me this
 _____ day of  October, 2005;


_____
Notary Public